**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **VANESSA SPENCE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. WGC-13-1895 |
| | ) | |
| **WAL-MART STORES EAST, LP,** | ) | |
| d/b/a Wal-Mart | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Vanessa Spence ("Ms. Spence") brought this action against Defendant Wal-Mart Stores East, LP, doing business as Wal-Mart, alleging negligence and seeking in excess of $75,000 in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 27. The case thereafter was referred to the undersigned. *See* ECF No. 28. Pending before the Court and ready for resolution is Wal-Mart's Motion for Summary Judgment (ECF No. 32). Ms. Spence filed an Opposition (ECF No. 36) and Wal-Mart filed a Reply (ECF No. 37).

Both Wal-Mart and Ms. Spence request an oral hearing. *See* ECF No. 32 at 2; ECF No. 36 at 2. No hearing is deemed necessary and therefore both requests are **denied**. The Court now rules pursuant to Local Rule 105.6 (D. Md. 2014).

### BACKGROUND

On the evening of Friday, July 22, 2011, Ms. Spence visited the Wal-Mart store in Germantown, Maryland to exchange a shower head fixture. Upon entering the store she walked to the department where shower head fixtures are sold, selected a different shower head fixture,

and then proceeded to Customer Service located in the front of the store. Ms. Spence slipped and fell on the floor between two cash registers as she approached the Customer Service Desk.

## JURISDICTION AND VENUE

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Ms. Spence resides in Gaithersburg, Maryland. Wal-Mart is incorporated in Delaware and its principal place of business is Bentonville, Arkansas. *See* ECF No. 1 ¶ 6. The amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**DISCUSSION**

*A.    Overview – Premises Liability*

Before addressing the parties' positions regarding genuine issues as to any material fact, the Court must address some preliminary matters. Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Maryland law to substantive law questions. Under Maryland law a property owner owes a certain duty to an individual who comes in contact with the property, and the scope of the duty owed is dependent upon the individual's status while on the property. *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998). Maryland law recognizes four categories of individuals: (1) an invitee, (2) a licensee by

invitation, (3) a bare licensee and (4) a trespasser.  An invitee is an individual who is on the property for a purpose related to the landowner's business.  "An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover."  *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986).

A licensee by invitation is a social guest and the landowner "owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the [landowner] but not easily discoverable."  *Flippo*, 348 Md. at 689, 705 A.2d at 1148 (citation omitted).  For a bare licensee, a person on the property with permission but for his/her own purposes, a landowner only owes a duty to refrain from willfully or wantonly injuring the bare licensee and to refrain from creating "'new and undisclosed sources of danger without warning the [bare] licensee.'"  *Id.* (citation omitted).  For a trespasser, someone who intentionally and without permission enters another's property, a landowner owes no duty except refraining from willfully or wantonly injuring or entrapping the trespasser.

On July 22, 2011 Ms. Spence was a customer at a Wal-Mart store in Germantown, Maryland.  She visited the store to return and exchange a shower head fixture.  Ms. Spence was in the store for a purpose related to Wal-Mart's business.  Ms. Spence was thus an invitee.

B.   *Negligence*

Under Maryland law, to establish a *prima facie* case of negligence, Ms. Spence must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'"  *Valentine v. On*

*Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (citations omitted).  Negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do.  *Maryland Civil Pattern Jury Instruction* 19:1.  Ordinary or reasonable care means "that caution, attention or skill a reasonable person would use under similar circumstances."  *Id.*

Wal-Mart owes a duty of ordinary care to keep its premises safe for an invitee such as Ms. Spence.  That duty is defined as follows.

> [A]n owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care.  The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) (internal citations omitted).

Wal-Mart is not an insurer of Ms. Spence's safety while Ms. Spence is on its premises.  "[N]o presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store."  *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965).  Therefore, "[i]n an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or stairway, the burden is on the customer to produce evidence that the storekeeper created the dangerous condition or had actual or constructive knowledge of its existence."  *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955).

*Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (citations omitted).  Negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do.  *Maryland Civil Pattern Jury Instruction* 19:1.  Ordinary or reasonable care means "that caution, attention or skill a reasonable person would use under similar circumstances."  *Id.*

Wal-Mart owes a duty of ordinary care to keep its premises safe for an invitee such as Ms. Spence.  That duty is defined as follows.

> [A]n owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care.  The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) (internal citations omitted).

Wal-Mart is not an insurer of Ms. Spence's safety while Ms. Spence is on its premises.  "[N]o presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store."  *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965).  Therefore, "[i]n an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or stairway, the burden is on the customer to produce evidence that the storekeeper created the dangerous condition or had actual or constructive knowledge of its existence."  *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955).

C.    *Dangerous Condition:  Created or Known*

Ms. Spence has not presented any evidence that the clear liquid substance on the floor was created or caused by Wal-Mart. *See Piceno v. Wal-Mart Stores, Inc.*, Civil No. CCB-07-268, 2008 U.S. Dist. LEXIS 36463, at *10 (D. Md. May 1, 2008) (denying Wal-Mart's motion for summary judgment because "Mr. Piceno's observation of a mop and bucket near the site of his fall would be sufficient to allow the jury reasonably to conclude that the area had been recently mopped."). Nor has Ms. Spence presented any evidence that Wal-Mart was actually aware of the clear liquid substance on the floor before she fell. *See Williams-Stewart v. Shoppers Food Warehouse Corp.*, Civil No. JKS-13-2518, 2014 U.S. Dist. LEXIS 123771, at *1-2, *5, *10 (D. Md. Sept. 5, 2014) (denying Defendant's motion for summary judgment because even though (a) Defendant was aware of leak from refrigeration units before Plaintiff's fall, (b) Defendant had placed multiple wet floor signs in the aisle along with "spill magic absorbent socks" and paper towels, and (c) Plaintiff conceded being aware of at least one wet floor sign near the refrigeration units, the court explained "depending on the extent of the leak and the location of the caution signs, a jury could conclude that Defendant did not provide sufficient warning and that the condition was thus not open and obvious.").

It is undisputed that at 7:31 p.m., six minutes before Ms. Spence fell at 7:37 p.m. as recorded by video surveillance[1], Anthony Chase, a Customer Service Manager at the Germantown store, walked through the Customer Service area.

> Q:   Okay. And your inspection was not part of your safety sweep; is that correct?
>
> A:   Yes, ma'am.
>
> \*                           \*                           \*

---

[1] Counsel for the parties have watched the video surveillance. Neither party provided a copy of the video surveillance to the Court.

> A: It was a routine walk through between the registers, just walk through, like I said, checking for safety hazards, watching the floor, grabbing any returns and whatever.
>
> Q: Do you have the occasion to walk through registers without doing an inspection?
>
> A: No, ma'am. It's part of what we're told we need to do.
>
> We always have to be aware, our eyes open, especially on a Friday night.

ECF No. 36-4 at 8 (Chase Dep. 39:18-20, 40:6-15). Mr. Chase did not see a clear liquid substance on the floor as he walked through the Customer Service area six minutes before Ms. Spence fell.

> Q: All right. Is it possible that you could have missed the liquid that was in the area when you did your inspection as opposed to the – –
>
> A: I don't believe so, no.
>
> Q: So when you say do not believe so, is it possible or not possible?
>
> A: No.
>
> Q: Okay. You would have – –
>
> A: I would have noticed, yes.
>
> Q: All right. And what makes you think you would have noticed it?
>
> A: I walked right through the area. I'm trained to spot things like that. I don't think I would have noticed walking through water.
>
> Q: Okay, you don't think you would not notice walking through water?
>
> A: Yes.

ECF No. 37-3 at 4 (Chase Dep. 70:11 - 71:5).

> Q: And is your testimony that six minutes before you didn't see any liquid on the ground; is that correct?
>
> A: Yes, ma'am.

ECF No. 36-4 at 12 (Chase Dep. 57:7-10).

D.   *Constructive Knowledge*

Wal-Mart contends Ms. Spence cannot establish its negligence by constructive notice. Relying upon various opinions from the Maryland State courts, Wal-Mart contends Ms. Spence fails to show how the unidentified clear liquid substance got on the floor and how long the unidentified clear liquid substance was on the floor before she slipped and fell. Summary judgment therefore should be entered in favor of Wal-Mart.

In her opposition Ms. Spence claims there are several material facts in dispute which preclude summary judgment in favor of Wal-Mart. First, Ms. Spence emphasizes the size of the spill, approximately three feet long and two-and-one half feet wide.

> The spill, which was located in an area that was frequented by both customers and Wal-Mart employees, was within the visible area of the cashiers manning the two adjacent checkout lanes (i.e. within 3-4 feet of each cashier) – both of whom had clear, unobstructed views of the floor area in front of them. One cashier was approximately two to three feet from and directly adjacent to the spill. This cashier was also facing the spill.

ECF No. 36-1 at 2 (citation omitted).

Second, Ms. Spence contends she could not see the spill on the floor before falling since she was looking and walking straight ahead and was focused on approaching the Customer Service Desk. Third, Ms. Spence asserts an accident had occurred earlier that day with another customer, information Ms. Spence gathered from overhearing two Wal-Mart employees talking as she waited for an ambulance. Fourth, Ms. Spence challenges Mr. Chase's contention that he

inspected the area for spills six minutes prior to her fall. "[W]hen he conducted his alleged inspection on the date of this incident, he was not looking down at the floor, but was merely using his peripheral vision and looking from side-to-side." *Id.* at 3.

Fifth, Ms. Spence suggests the soda cooler is the source of the clear liquid substance on the floor upon which she slipped and fell. A soda cooler is located behind one of the cash registers. Ms. Spence fell on the same side of the cooler as Mr. Chase acknowledged during his deposition. *See* ECF No. 36-4 at 10 (Chase Dep. 51:15-17). Mr. Chase further admitted he did not physically inspect the soda cooler by the register where Ms. Spence fell. *See id.* at 15 (Chase Dep. 81:14-17). Sixth, Ms. Spence argues Wal-Mart failed to follow its own policy regarding precautionary measures to prevent slips and falls. Specifically, Wal-Mart failed to place a mat by the soda cooler.

Seventh, Ms. Spence questions the failure to utilize maintenance associates to increase floor coverage during times of increased customer traffic per Wal-Mart's own guidelines. The Customer Service Desk is a high traffic area and, as Mr. Chase disclosed, Friday nights are a time of increased customer traffic. Finally, Ms. Spence claims it is disputed whether Wal-Mart followed its own floor care policy particularly since Wal-Mart has declined to produce the safety sweep sheet for the date of the incident. Ms. Spence summarizes the material facts in dispute as follows.

> In the instant case, the Plaintiff fell near a cooler which contained liquid substances, and it can reasonably be inferred to have, a cooling element. In other words, viewing the evidence in the light most favorable to the Plaintiff, the source of the clear[] liquid substance was the cooler. In addition, as noted, Mr. Chase did not inspect the cooler prior to the incident. Moreover, the area of the cooler was cleaned after the accident. Finally, the Defendant should not get the benefit of not having their daily sheet for its safety sweep inspections.

*Id.* at 11.

In its reply Wal-Mart notes the mere size of the spill, coupled with the proximity of the cashiers to the spill, is insufficient to establish constructive knowledge. Second, the purported source of the clear liquid substance on the floor, *i.e.,* the cooler, is mere speculation by Ms. Spence. Wal-Mart contends, before filing her opposition to the motion for summary judgment, Ms. Spence never claimed the cooler was the source of the spill. At her deposition Ms. Spence testified not knowing the source of the clear liquid substance. In answering interrogatories Ms. Spence acknowledged not knowing the source of the clear liquid substance on the floor and presumed the source was another customer. "There is no evidence that the cooler by the cash registers (and the purported failure to place a mat in front of them) played any role in the incident." ECF No. 37 at 3.

Ms. Spence's reference to another alleged incident involving a different customer earlier in the day is irrelevant, according to Wal-Mart, because no evidence has been presented to suggest the other incident involved the identical hazard as Ms. Spence encountered. With regard to Wal-Mart's policies, Wal-Mart contends Ms. Spence's emphasis is misplaced. "As to the sweep logs (or purported lack thereof), the inspection conducted by Mr. Chase six minutes before the fall was not a scheduled inspection that would have appeared on any scheduled log." *Id.* (footnote omitted). Further, because Maryland has rejected the mode-of-operation rule[2], "the sufficiency of the Defendant's policies or the discretionary decisions made by management (such

---

[2] "Under the mode-of-operation rule, 'the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise,' based on the manner the owner/occupier regularly does business. *Chiara* [*v. Fry's Food Stores of Arizona, Inc.*, [152 Ariz. 398,] 733 P.2d [283,] 285 [(Ariz. Ct. App. 1987]. The key to the application to the mode-of-operation rule is the reasonable anticipation of the patron's carelessness under the circumstances. *Tom v. S.S. Kresge Co., Inc.*, 130 Ariz. 30, 633 P.2d 439, 441 (Ariz. Ct. App. 1981). Under the mode-of-operation rule, actual or constructive notice of a dangerous condition prior to an accident is immaterial. *Gump* [*v. Wal-Mart Stores, Inc.*, 93 Haw. 428,] 5 P.3d [418,] 441 [Haw. Ct. App. 1999), *aff'd in part and rev'd in part on other grounds*, 93 Haw. 417, 5 P.3d 407 (Haw. 2000)]." *Maans v. Giant of Md., L.L.C.*, 161 Md. App. 620, 637, 871 A.2d 627, 637 (2005).

as whether to use additional personnel to check for spills on a Friday night) cannot, as a matter of law, support a finding of constructive notice." *Id.*  In short, Wal-Mart claims Ms. Spence fails to meet her burden of demonstrating Wal-Mart was on constructive notice of the spill.

The Court has considered all evidence presented by the parties and must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Under Maryland law among the duties imposed on a landowner vis-à-vis an invitee is the duty to inspect.  "The duties of a business invitor thus include the obligation to warn individuals of known hidden dangers, *a duty to inspect*, and a duty to take reasonable precautions against foreseeable dangers." *Tennant*, 115 Md. App. at 388, 693 A.2d at 374 (emphasis added).  The duty to inspect does not mandate a continuous inspection of a store which would be unreasonable. *Moulden*, 239 Md. at 233, 210 A.2d at 726.

To establish a breach of a duty to inspect Ms. Spence must show (a) Wal-Mart failed to make reasonable periodic inspections of its premises and (b) had Wal-Mart made such reasonable inspections, Wal-Mart would have discovered the dangerous condition. *Burkowske v. Church Hosp. Corp.*, 50 Md. App. 515, 523, 439 A.2d 40, 45 (1982), *overruled on other grounds by B & K Rentals & Sales Co. v. Universal Leaf Tobacco Co.*, 324 Md. 147, 154, 596 A.2d 640, 643 (1991).  It is undisputed Mr. Chase conducted an unscheduled inspection of the customer service area *six minutes before* Ms. Spence slipped and fell.

Ms. Spence fails to establish the second element of a breach of duty to inspect, *i.e.,* had Wal-Mart made such reasonable inspections, Wal-Mart would have discovered the dangerous condition.  Mr. Chase testified that he walked through the area six minutes before Ms. Spence

slipped and fell. As he conducted that unscheduled walk through or "zoning"[3], Mr. Chase did not observe on the floor nor did he walk through a clear liquid substance.

Ms. Spence concedes she did not see anything on the floor before she slipped and fell.

> Q: Do you know what you slipped in?
>
> A: I don't know what it was, no.
>
> Q: What color was it?
>
> A: Clear.
>
> Q: Do you know if it was greasy, oily, if it was, if it felt like water?
>
> A: I just know it was some type of liquid.
>
> Q: But you couldn't tell if it was something that was slippery or oily or if it was just something that had the consistency of water?
>
> A: No, I couldn't tell.
>
> Q: Did you see it at all before you fell?
>
> A: No.
>
> Q: Do you know how long it was there?
>
> A: No.
>
> Q: Do you know where it came from?
>
> A: No.

ECF No. 32-2 at 9-10 (Spence Dep. 32:18 - 33:12).

Ms. Spence claims the spill was sizeable, describing it as large. *See* ECF No. 36-3 at 1 (Spence Aff. ¶ 6). Ms. Spence explains how she missed seeing the spill. "I was unable to

---

[3] "Part of my duties as a customer service manager was to periodically inspect the area around the registers and customer service desk to ensure the area was clean and free of potential hazards. This inspection procedure is referred to as 'zoning' an area." ECF No. 32-3 at 1(Chase Aff. ¶¶ 2-3).

observe the spill prior to my slip-and-fall because I was looking and walking straight ahead and since I was concentrating on reaching the Customer Service Desk at the front of the store." *Id.* (Spence Aff. ¶ 5). This statement is consistent with her deposition testimony.

> Q: Do you know why you didn't see it before you fell?
>
> A: I usually don't look down when I walk.
>
> Q: Do you know why you didn't see it when you were approaching from five, six, seven, ten feet away?
>
> A: No, because my concentration was on looking straight towards going to the Customer Service.

ECF No. 32-2 at 10 (Spence Dep. 36:4-12). Ms. Spence however suggests Mr. Chase's inspection six minutes before her slip and fall was not reasonable because he did not look down to the floor but scanned the floor with his peripheral vision only. Ms. Spence has not demonstrated the clear liquid substance was on the floor *at the time* Mr. Chase conducted his inspection, which was not part of a safety sweep.[4]

Ms. Spence acknowledged during her deposition that both cashiers were assisting customers when she slipped and fell. *See* ECF No. 32-2 at 9 (Spence Dep. 32:6-13). "The Defendant admittedly has a policy requiring cashiers to be vigilant in their areas even when

---

[4] Q: And the inspection – – so I'm clear – – the inspection that you did six minutes before was not part of the safety sweep?

A: No, ma'am.

Q: Tell me what the distinction is in terms of the inspection that you do when you're always walking as you described, versus when you do a safety sweep inspection.

A: The biggest difference is really just that the maintenance associate is involved in emptying out trash and things of that nature, cleaning up our trash cans and getting all that stuff taken care of on the front end.

Other than that, like I said, you know, constantly walking, you're always looking for the type of hazards.

ECF No. 36-4 at 9 (Chase Dep. 42:2-17).

attending to customers; however, Spence failed to produce any evidence to support a finding that either . . . the cashiers were not exercising such vigilance or what they would have observed had they properly multi-tasked while waiting on customers." ECF No. 37 at 2; *see* ECF No. 36-4 at 9 (Chase Dep. 43:12 - 44:4).[5]  The Court finds Ms. Spence has not demonstrated a breach of duty to inspect by Wal-Mart.

Finally, under the constructive notice analysis, Ms. Spence has not presented any evidence that Mr. Chase or Wal-Mart would have detected the clear liquid substance on the floor in sufficient time to prevent her slip and fall.  The facts of this case are distinguishable from *Mack-Epps v. Supervalu, Inc.*, Civ. No. WMN-11-530, 2011 U.S. Dist. LEXIS 120198 (D. Md. Oct. 18, 2011) where an employee had called for a cleanup of the produce area twenty minutes before the plaintiff slipped on a mashed grape.  In this case no evidence has been presented of any Wal-Mart employee being aware of the clear liquid substance on the floor *before* Ms. Spence fell.

The evidence does not establish how the clear liquid substance came to be spilled on the floor.  In her answer to an interrogatory Ms. Spence suggests another customer was the source of the spill.  *See* ECF No. 37-2 at 3 (Interrogatory No. 25).  In her opposition however Ms. Spence

---

[5] Q: What, if any instructions are given to cashiers regarding their station or their register?

A: As far as?

Q: As far as inspecting an area.

A: Well, obviously, if the cashiers have customers, undivided attention is to be, you know, given to a customer.

If there's something that happens, if they see, that they're aware of, then obviously they need to address it when it happens.

But other than that, if they're free of customers in the red line, we leave our registers and walk our areas, a little boxed area of the register, to make sure everything is okay.

claims the soda cooler is the source of the clear liquid substance on the floor. During his deposition Mr. Chase testified he did not recall any problems with the cooler leaking between registers 8 and 10[6], the area where Ms. Spence slipped and fell. The Court finds this case is akin to *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 123, 113 A.2d 405, 410 (1955) (affirming judgment against plaintiff who sued store because she slipped and tumbled down some stairs. "[E]ven assuming that there was some water on the stairway before plaintiff fell, there was no evidence to indicate how it had been brought there or how long it had been there. Therefore, we find that the alleged dangerous condition, namely the water on the stairway, was not such as to warrant the inference that it had been there long enough to have enabled defendant to discover and correct it by the exercise of ordinary care.") and *Montgomery Ward & Co. v. Hairston*, 196 Md. 595, 597, 78 A.2d 190 (1951) (reversing judgment in favor of plaintiff who slipped and fell at the foot of stairs on an "oily, greenish, grayish substance". The plaintiff "could not say what the substance was, or how long it had been there." No oily or greasy articles were sold in that part of the store. The store had been thoroughly cleaned after closing the previous night and had been mopped with a dry mop the following morning.) The evidence is legally insufficient to support an inference of constructive notice. Ms. Spence cannot assert the clear liquid substance was placed on the floor by a Wal-Mart employee, that it was known by Wal-Mart or that the clear liquid substance was on the floor for an appreciable period of time before she slipped and fell. Further the mere presence of the clear liquid substance on the floor does not warrant an inference that the clear liquid substance was on the floor long enough for Wal-Mart to discover

---

[6] Q: Do you have any recollection of there being any problems with that cooler between the Registers 8 and 10 leaking while you were at Germantown?

A: No, sir.

ECF No. 36-4 at 1 (Chase Dep. 83:17-21).

and correct by exercising ordinary care, *i.e.,* cleaning up the spill or cordoning off the area until the spill could be removed.  Ms. Spence fails to establish a *prima facie* case of negligence.

## CONCLUSION

For the foregoing reasons the Court finds there are no genuine issues as to any material fact and Wal-Mart is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An Order will be entered separately.

September 23, 2014                        _____/s/_____
          Date                                       WILLIAM CONNELLY
                                           UNITED STATES MAGISTRATE JUDGE